Minshall, J.
The real question in this case is, When did the rent for which these notes were given, accrue? If upon the facts as found, it accrued, in the proper sense of the term, in the life time of Marcella McLean, the notes, to their full value, should have been inventoried as assets of her estate. The lease, in each case, or more properly speaking, the agreement for the occupation and farming of the land, *438 was made, the one August 15, 1892, and the other September 3, of the same year. They gave to the tenant, in each case, the right to seed part of the land in wheat in the fall of 1892, and to farm the land for the year 1893. This is the common way among farmers of renting lands to be farmed for a year — wheat in our climate being sown in the fall and harvested in the following summer. No one would claim, under this letting, either tenant could have sown his tract in wheat in the fall of 1893, with the right to harvest it in 1894, for all his rights in the premises were to end with the harvesting of the crops, cultivated in that year, and the rent then accrued; and would have been payable but for the agreement by which the time was extended to the first of March following.
By an indulgence of the common law in favor of agriculture, incorporated in the statute law of this state, Sections 6026 and 6027, Revised Statutes, one whose estate may be terminated by an event, the time whereof is uncertain, has the right to reap what he has sown, although this may, to some extent, trench upon the occupancy of the tenant of the next estate in remainder or reversion. This, however, cannot be said to impair the next estate; for it is an incident, created by law, of every estate in reversion or remainder — a burthen, if it be one, imposed, as we have said, in the interest of agriculture; for, when the termination of an estate is uncertain, it would greatly discourage the cultivation of the land, if every such tenant must sow at his peril. Hence it is that the right to harvest growing crops, sown and cultivated before the termination of the partícula,.' estate, in no légal sense infringes upon the next estate in possession. Every such estate is created subject to such contingency; and the right is an inch *439 dent to every estate whose termination is not fixed by some definite time. When the time of the termination of an estate is definitely known, the reason ceases, and no such right exists; and this is why we have said, that if either of the renters of Mrs. McLean had sown the land rented to him in wheat in the fall of 1893, he would have done so at his peril, as the termination of his tenancy was a fixed period, limited to the time in which annual crops are usually harvested in the fall.
It therefore follows, as we think, that the agreement for the cultivation of the particular farms of the deceased, terminated in her life time, and the rent agreed to be paid on or before March 1,1894, had accrued, and the notes should have been inventoried at their full value as assets of her estate. The makers of the notes could make no defense to their collection, as they had fully enjoyed, under the agreement and the law, the consideration for their respective promises to pay.
Much confusion has arisen in the case from the fact that the rent did not, by the agreement of the parties, become due until March 1, 1894, about six months after the death of the life tenant, from which it is assumed that the rent then accrued. This would imply that the term, instead of being for a year, was for a year and six months, which is contrary to the fact. The accrual of rent does not necessarily depend upon the time fixed by the parties for its payment. The accrual of rent has respect to the term of the lease. It accrues as the term elapses and is fully accrued when the term is complete. The term and the enjoyment of it is the consideration for the rent; when the term is complete the rent has accrued. If, as claimed, the question depends upon when the rent is made payable,, irrespective <of the *440 time of its accrual, then the next in estate might be .entitled to it any number of years after it had been earned, for any number of years may be given for its payment. It is then evident that the accrual of rent depends upon the lapse of the term for which it is to be paid, and not upon the lapse of the time given for its payment. The latter is a matter of agreement between the parties. If there were no express agreement the rent would become due on its accrual; but, by agreement, it may be made to become due at any time that will best suit the convenience of the parties. Here, by agreement, it was made to become due in six months after its accrual, or, in other words, after it had been earned by the land. Hence the remaindermen have no claim to this rent — it was all earned, or had accrued, in the legal sense, in the lifetime of Marcella McLean, and is consequently assets of her estate, though the notes given for it did not become due until after her death.
It is thought that the case of Sutliff v. Atwood, 15 Ohio, St., 186, sustains the contention of the defendant in error in this regard. All that this case decides, that can be in any way helpful to the claim of the remaindermen is, that the taking of the notes for rent did not change the character of the consideration for which they were given while they remained in the hands of the lessor, un-negotiated; and consequently, a suit on them by the lessor against the lessee, would be in fact a suit for rent. This is not questioned. But there is no such question in this case. The principle, however, on which the case was decided, applied to this case, disposes of any claim made for the remaindermen to any portion of the rent due on these notes. Sutliff leased his dairy farm to Atwood for the term of three years at an annual rent of $500, payable at the end of each year. *441 He transferred the first note to one Quimby, who recovered a judgment upon it, levied on the lease, and purchased it in at the sheriff’s sale, and then assigned it to the lessor, Sutliff. The latter then brought suit on the notes for the rent that accrued after the assignment of the lease to him, and it was held that he could not recover. The ratio decidendi of the decision is, that being in possession of the demised premises under the assignment, his right to rent was compensated by his duty to pay it; in other words, he could not occupy the position of lessor and lessee at the same time. So, in this case, when the life tenant died the estate of the remaindermen, by operation of law, at once became an estate in possession, and they could not demand rent therefor from any other person. Whether they in fact took possession is immaterial; they had the right to it, subject to the right of the administrator of the deceased life tenant, or her lessee, to the growing crops; and we may assume, though there is no finding as to the fact, that they took possession, as possession generally accompanies the right. Therefore having the possession and the right to it, they cannot, in law or reason, demand rent from someone else, for a possession which they themselves have and enjoy.
In Millikin v. Welliver, 37 Ohio St., 460, 468, the corn in question was planted and raised after the death of the lessor, Smith, and so went to the devisees and not to the administrator.
We have examined the cases and authorities cited by the defendant in error, and fail to see how, on the facts of the case, they support his contention. He assumes that the lease did not terminate until the rent notes became due. In this, as we have shown, he is in error. Neither tenant had any right to enter upon the farm, leased to him, after the crops had all *442 been harvested in the usual time. Most of the cases cited relate to leases made by the owner in fee, who died before the termination of the lease. In such cases, the death of the lessor does not terminate the lease, and as there is privity of estate between the administrator and the heir, the rent is apportioned, that which had accrued at the death of the lessor going to the administrator, and that which accrues afterward attends the reversion and goes to the heir or devisee. In some cases the death of the life tenant does not terminate his estate, as in the case of an estate per outer vie. In such cases, and in all other cases, where the death of a life tenant does not terminate an existing lease, there may be an apportionment between the administrator and the remainder-men on the above principles. But no case is produced, and we think no well considered one can be found, where an apportionment has been made between an administrator of the life tenant and the owner of the next estate, taking effect in possession, immediately upon the death of the life tenant. In such cases at common law, where the term had not ended at the death of the life tenant, no rent could be collected — not by the administrator, for the reason that the lessee was deprived of the consideration for his promise,— the possession of the land; nor by the remaindermen, for there is no privity of estate between him and the life tenant’s lessee; and, for the further reason, that rent, in his favor, cannot issue out of lands in his own possession. Whether this is so in Ohio as to the administrator, does not arise in this case; for, as above shown, the tenants enjoyed all they were entitled to under the letting to them and for which they promised to pay the notes in question; and do not, it seems, deny their liability to pay, either to the administrator or to the re *443 maindermen. And it is worthy of note in this connection, that it is admitted that if Marcella McLean had farmed the lands as they were farmed by the tenants, her administrator would have been entitled to the crops raised in the year 1893, under the statute above referred to. It seems then a strange sort of logic by which the conclusion is reached, that having transferred this right to another for a consideration secured by a note, the note would not be hers, and so assets of her estate, without regard to when it was made payable.
The whole confusion, as we have said, arises out of not properly distinguishing between the accrual of rent and the time when it is made payable. It is generally made payable at the lapse of some particular period of the lease, as annually or by the month, and so becomes payable as it matures; and, in all such cases, the time of payment and the accrual of the rent are coincident. But, as before pointed out, it is not necessary that this should be so in order to reserve rent. Time for the payment of rent may be given irrespective of the time of its accrual.

Reversed and exceptions sustained.